## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF KANSAS

KATHLEEN B.,[1]                          )
                                         )
              Plaintiff,                 )
                                         )         CIVIL ACTION
v.                                       )
                                         )         No. 19-1219-JWL
ANDREW M. SAUL,                          )
Commissioner of Social Security,         )
                                         )
              Defendant.                 )
_____ )


### MEMORANDUM AND ORDER

Plaintiff seeks review of a decision of the Commissioner of Social Security denying Disability Insurance Benefits (DIB) and Supplemental Security Income (SSI) benefits pursuant to sections 216(i), 223, 1602, and 1614 of the Social Security Act, 42 U.S.C. §§ 416(i), 423, 1381a, and 1382c (hereinafter the Act).  Finding no error in the Administrative Law Judge's (ALJ) evaluation of the psychological consultants' opinions, the court ORDERS that judgment shall be entered pursuant to the fourth sentence of 42 U.S.C. § 405(g) AFFIRMING the Commissioner's final decision.

## I.      Background

---

[1] The court makes all its "Memorandum and Order[s]" available online.  Therefore, in the interest of protecting the privacy interests of Social Security disability claimants, it has determined to caption such opinions using only the initial of the Plaintiff's last name.

Plaintiff filed applications for DIB and SSI on January 14, 2016.  (R. 12, 251-63).
After exhausting administrative remedies before the Social Security Administration
(SSA), Plaintiff filed this case seeking judicial review of the Commissioner's decision
pursuant to 42 U.S.C. § 405(g).  Plaintiff claims the ALJ erroneously failed to include a
mental limitation in the residual functional capacity (RFC) he assessed which would
account for Dr. Schulman's and Dr. Duclos's limitation to understand, remember, use
judgment, and make decisions for 1-2 step instructions and tasks, despite according
significant weight to the psychologists' opinions, and he failed to explain why he rejected
the limitation to 1-2 step instructions and tasks.  (Pl. Br. 14) (citing R. 96, 109, 130, 149).

The court's review is guided by the Act.  Wall v. Astrue, 561 F.3d 1048, 1052
(10th Cir. 2009).  Section 405(g) of the Act provides that in judicial review "[t]he
findings of the Commissioner as to any fact, if supported by substantial evidence, shall be
conclusive."  42 U.S.C. § 405(g).  The court must determine whether the ALJ's factual
findings are supported by substantial evidence in the record and whether he applied the
correct legal standard.  Lax v. Astrue, 489 F.3d 1080, 1084 (10th Cir. 2007); accord,
White v. Barnhart, 287 F.3d 903, 905 (10th Cir. 2001).  "Substantial evidence" refers to
the weight, not the amount, of the evidence.  It requires more than a scintilla, but less
than a preponderance; it is "such relevant evidence as a reasonable mind might accept as
adequate to support a conclusion."  Richardson v. Perales, 402 U.S. 389, 401 (1971); see
also, Wall, 561 F.3d at 1052; Gossett v. Bowen, 862 F.2d 802, 804 (10th Cir. 1988).
Consequently, to overturn an agency's finding of fact the court "must find that the

evidence not only <u>supports</u> [a contrary] conclusion, but <u>compels</u> it." <u>I.N.S. v. Elias-Zacarias</u>, 502 U.S. 478, 481, n.1 (1992) (emphases in original).

The court may "neither reweigh the evidence nor substitute [its] judgment for that of the agency." <u>Bowman v. Astrue</u>, 511 F.3d 1270, 1272 (10th Cir. 2008) (quoting <u>Casias v. Sec'y of Health & Human Servs.</u>, 933 F.2d 799, 800 (10th Cir. 1991)); <u>accord</u>, <u>Hackett v. Barnhart</u>, 395 F.3d 1168, 1172 (10th Cir. 2005); <u>see also</u>, <u>Bowling v. Shalala</u>, 36 F.3d 431, 434 (5th Cir. 1994) (The court "may not reweigh the evidence in the record, nor try the issues <u>de novo</u>, nor substitute [the Court's] judgment for the [Commissioner's], even if the evidence preponderates against the [Commissioner's] decision.") (quoting <u>Harrell v. Bowen</u>, 862 F.2d 471, 475 (5th Cir. 1988)).  Nonetheless, the determination whether substantial evidence supports the Commissioner's decision is not simply a quantitative exercise, for evidence is not substantial if it is overwhelmed by other evidence or if it constitutes mere conclusion.  <u>Gossett</u>, 862 F.2d at 804-05; <u>Ray v. Bowen</u>, 865 F.2d 222, 224 (10th Cir. 1989).

The Commissioner uses the familiar five-step sequential process to evaluate a claim for disability.  20 C.F.R. §§ 404.1520, 416.920; <u>Wilson v. Astrue</u>, 602 F.3d 1136, 1139 (10th Cir. 2010) (citing <u>Williams v. Bowen</u>, 844 F.2d 748, 750 (10th Cir. 1988)). "If a determination can be made at any of the steps that a claimant is or is not disabled, evaluation under a subsequent step is not necessary." <u>Wilson</u>, 602 F.3d at 1139 (quoting <u>Lax</u>, 489 F.3d at 1084).  In the first three steps, the Commissioner determines whether claimant has engaged in substantial gainful activity since the alleged onset, whether she has a severe impairment(s), and whether the severity of her impairment(s) meets or

equals the severity of any impairment in the Listing of Impairments (20 C.F.R., Pt. 404, Subpt. P, App. 1).  Williams, 844 F.2d at 750-51.  After evaluating step three, the Commissioner assesses claimant's RFC.  20 C.F.R. §§ 404.1520(e), 416.920(e).  This assessment is used at both step four and step five of the sequential evaluation process.  Id.

The Commissioner next evaluates steps four and five of the process—determining at step four whether, considering the RFC assessed, claimant can perform her past relevant work; and at step five whether, when also considering the vocational factors of age, education, and work experience, she is able to perform other work in the economy. Wilson, 602 F.3d at 1139 (quoting Lax, 489 F.3d at 1084).  In steps one through four the burden is on Plaintiff to prove a disability that prevents performance of past relevant work.  Blea v. Barnhart, 466 F.3d 903, 907 (10th Cir. 2006); accord, Dikeman v. Halter, 245 F.3d 1182, 1184 (10th Cir. 2001); Williams, 844 F.2d at 751 n.2.  At step five, the burden shifts to the Commissioner to show that there are jobs in the economy which are within the RFC previously assessed.  Id.; Haddock v. Apfel, 196 F.3d 1084, 1088 (10th Cir. 1999).

II.     Discussion

Plaintiff points out that the ALJ accorded significant weight to the psychiatric opinions of the state agency psychological consultants, Dr. Schulman, Ph.D., Dr. Duclos, Psy.D., and Dr. O'Brien M.D.  (Pl. Br. 13-14).  She notes that Dr. Schulman and Dr. Duclos opined that Plaintiff was limited to performing only 1-2 step instructions and tasks but argues "[t]he ALJ did not explain why he discounted the limitation to one- to two-step instructions and tasks, despite affording the opinions significant weight.  Id. at 14.

4

She argues, "The ALJ's RFC limiting [Plaintiff] to simple, routine, repetitive tasks does not account for the limitation to one- to two-step instructions and tasks." (Pl. Br. 14-15) (citing Cayer v. Colvin, Civil No. 15-1321-JAR, 2016 WL 4208108 (D. Kan Aug. 9, 2016); Davis v. Comm'r of S.S.A., No. CIV 17-291-RAW-SPS, 2018 WL 4346692, at *4 (E.D. Okla. Aug. 24, 2018); Osbey v. Colvin, CIV-16-49-R, 2017 WL 521946 at *3-4 (W.D. Okla. Jan. 17, 2017) and Bray v. Colvin, No. CIV-12-449-SPS, 2014 WL 1331043 (E.D. Okla. Mar. 31, 2014)).

She argues the ALJ "did not explain why he discarded the opined limitation to one to two-step instructions and tasks, despite adopting other portions of the State [sic] agency consultants' opinions." Id. at 16. And, she argues that the ALJ did not find Plaintiff had greater mental capacities than the state agency consultants opined. Id. She argues that each of the representative jobs relied upon by the ALJ in finding Plaintiff is able to perform work existing in the economy requires a reasoning level of two whereas the ability to perform only one to two step instructions and tasks is more consistent with reasoning level one, which the Dictionary of Occupational Titles (DOT) defines "as the ability to '[a]pply commonsense understanding to carry out simple one- or two-step instructions [and d]eal with standardized situations with occasional or no variables in or from these situations encountered on the job.'" Id. at 18 (quoting DOT, App. C, § III, available online at: https://occupationalinfo.org/appendxc_1.html#III (last visited June 7, 2020)). Plaintiff argues, "Dr. Schulman also acknowledged the opinion of the consultative examiner, Dr. Pulcher (to whom the ALJ also assigned significant weight) as

opining that [Plaintiff] had the capacity for one- to two-step instructions and tasks." Id. at 19 (citing R. 94).

The Commissioner argues that Plaintiff's argument that there is a discrepancy between the psychologists' limitation regarding one to two step tasks and instructions and the mental RFC limitations "to simple, routine, and repetitive tasks; simple work-related decisions; and simple instructions … is flawed for two reasons." (Comm'r Br. 4-5). First, he argues it is the ALJ's duty to assess RFC, that there is no requirement for an exact correspondence between the RFC assessed and a medical opinion, and "the ALJ reasonably fulfilled his duty to translate the medical opinions and other evidence into an RFC finding. A limitation to simple, routine, and repetitive tasks is congruent with the agency's definition of unskilled work—the least mentally demanding type of work possible." Id. at 5 (emphasis in original) (citation to the record omitted). He distinguishes Cayer on the basis of vocational expert (VE) testimony in that case to the effect "there was a meaningful difference between the limitations contained in the RFC and those contained in the state agency consultant opinions." Id. (citing 2016 WL 4208108 at *2).

Second, the Commissioner argues that even if the ALJ had stated the one to two step limitation in the RFC he assessed, "Plaintiff would still be able to perform the three unskilled jobs" relied upon by the ALJ. Id. at 6. He acknowledges that the jobs are general educational development (GED) reasoning level two in the DOT but disagrees with Plaintiff's assertion "that a restriction to one-to-two-step tasks would be more consistent with a GED reasoning level of one." Id. He argues "that 'GED does not

describe specific mental or skill requirements of a particular job, but rather describes the general educational background that makes an individual suitable for the job, broken into the divisions of Reasoning Development, Mathematical Development and Language Development.'"  (Comm'r Br. 7) (quoting Anderson v. Colvin, 514 F. App'x 756, 764 (10th Cir. 2013)).  He argues, "Plaintiff has more than sufficient education to do unskilled work, having completed high school and two years of college."  Id.  He points out, "Even where the Tenth Circuit has suggested that GED reasoning level is relevant to the mental requirements of a job, it has indicated that level-two reasoning is consistent with 'simple and routine work tasks.'"  Id. (quoting Hackett v. Barnhart, 395 F.3d 1168, 1176 (10th Cir. 2005)).  Finally, he argues the district court for the Eastern District of Oklahoma "recently rejected the precise argument advanced here, holding that an RFC limitation to simple, one-to-two-step tasks with routine supervision was consistent with GED reasoning level 2."  Id. at 7-8 (citing Nelson v. Comm'r of Soc. Sec. Admin., No. CIV-17-360-SPS, 2019 WL 1293309, at *2 (E.D. Okla. Mar. 21, 2019)).

> In her Reply Brief, Plaintiff reiterates her argument and argues that
>
> As the court in Davis held "[if] a claimant is limited to simple one- to two-step instructions, it stands to reason that a job requiring the ability to understand and carry out detailed but uninvolved written or oral instructions and with problems involving a few concrete variables (a reasoning level 2) would create a conflict."

(Reply 3) (quoting Davis, 2018 WL 4346692 at *4).  Plaintiff also cites this court's decision in Carolyn J. S. v. Saul, No. 18-4049-JWL, 2019 WL 2523575, at *3 (D. Kan. June 19, 2019) as contrary to the Commissioner's argument here.  (Reply 3-4).  Finally, Plaintiff distinguishes Nelson.  Id. at 4-5.

**A.     The ALJ's Evaluation**

In applying the Commissioner's Psychiatric Review Technique the ALJ found

Plaintiff has mild limitations in both understanding, remembering, or applying

information; and in adapting or managing oneself.  He found she has moderate limitations

in interacting with others; and in concentrating, persisting, or maintaining pace.  (R. 18).

In his mental RFC, the ALJ found Plaintiff can

> understand simple instructions, and carry out and remember simple,
> routine, and repetitive tasks involving only simple, work-related decisions
> and with few, if any, work place changes; and can tolerate occasional
> interaction with coworkers, with supervisors, and with the public.

Id. at 19 (finding no. 5) (bold omitted).

The ALJ summarized Plaintiff's allegations of symptoms and the record medical

evidence including Plaintiff's treatment records, the reports of consultative examinations,

and the opinion evidence.  Id. at 19-27.  Regarding Plaintiff's mental RFC, the ALJ

accorded significant weight to the opinions of three state agency psychological

consultants, Dr. Schulman, Ph.D.; Dr. Duclos, Psy.D.; and Dr. O'Brien, M.D.  Id. at 23.

He also accorded significant weight to the February 2016 opinion of Dr. Pulcher, Ph.D.

who provided a report of a consultative psychological examination and who had also

examined Plaintiff in 2012 in connection with an earlier disability application.  Id. at 24.

The ALJ accorded no weight to the medical opinion of Dr. Johnson, Ph.D., who treated

Plaintiff with cognitive behavioral therapy and medication management.  Id. at 24-25.

Finally, the ALJ accorded little weight to the opinion of Ms. Tamera Farmer, APRN,

whom he found had examined Plaintiff only once, opined that Plaintiff is unable to work,

and assessed a Global Assessment of Functioning (GAF) of 60.  Id. at 26.  Plaintiff

makes no allegation of error in the ALJ's evaluation of the opinions of Dr. Pulcher, Dr.

Johnson, or Ms. Farmer and makes mention of the opinion of Dr. Pulcher in the argument

section of her Brief only to the extent of arguing that Dr. Schulman understood Dr.

Pulcher to also opine that Plaintiff "had the capacity for one- to two-step instructions and

tasks." (Pl. Br. 19).

### B.    Analysis

As Plaintiff asserts, the DOT defines level one reasoning development "as the

ability to '[a]pply commonsense understanding to carry out simple one- or two-step

instructions [and d]eal with standardized situations with occasional or no variables in or

from these situations encountered on the job.'" Id. at 18 (quoting DOT, App. C, § III,

available online at:  https://occupationalinfo.org/appendxc_1.html#III (last visited June 7,

2020)).  Plaintiff's argument that the ALJ erred not to include a specific limitation to 1

and 2 step instructions in his RFC assessment rests upon her assumption that Dr.

Schulman's and Dr. Duclos's "opined limitation to one to two-step instructions and

tasks" is precisely the same as a General Educational Development, level one reasoning

development.

However, the DOT explains that

General Educational Development embraces those aspects of education
(formal and informal) which are required of the worker for satisfactory job
performance.  This is education of a general nature which does not have a
recognized, fairly specific occupational objective.  Ordinarily, such
education is obtained in elementary school, high school, or college.
However, it may be obtained from experience and self-study.

The GED Scale is composed of three divisions:  Reasoning Development, Mathematical Development, and Language Development.

DOT, App'x C, available online at:  https://occupationalinfo.org/appendxc_1.html#III (last visited June 7, 2020).

Thus, as the Commissioner argues, GED deals with the amount of education (formal or informal) an occupation requires, "reasoning development" is one of three divisions of educational development, and "01 level reasoning development" relates to occupations which require the least educational development in reasoning.  While it might be reasonable for a layman, an attorney, or a court to conclude from the first sentence of the DOT definition of 01 level reasoning development that the educational development necessary "to carry out simple one- or two-step instructions" is equivalent with the mental abilities to "understand, remember, use judgment, and make decisions for 1 / 2 step instructions and tasks," as Dr. Schulman and Dr. Duclos opined  (R. 109, 149), and to "attend, concentrate, and maintain pace and persistence for 1-2 step tasks" as Dr. Duclos opined, Plaintiff cites no authority requiring it.  Reasoning level in the DOT relates to the educational background a particular occupation requires whereas mental abilities in a Mental Residual Functional Capacity Assessment represent 20 mental functional abilities grouped in 4 categories—Understanding and Memory, Sustained Concentration and Persistence, Social Interaction, and Adaptation.  POMS DI 24510.060(B)(2).  The ability to understand and remember instructions and the ability to carry out instructions fall within the categories of Understanding and Memory, and of Sustained Concentration and Persistence, respectively.  (R. 149); see also POMS DI

24510.060(B)(2).  While educational requirements and mental abilities intuitively appear to be related, Plaintiff has shown no direct correlation and none of Dr. Schulman, Dr. Duclos, Dr. O'Brien, or Dr. Pulcher stated a correlation between his or her opinion regarding Plaintiff's mental abilities and the DOT GED reasoning levels.

And, none of the cases cited by Plaintiff in support of her argument rely on any basis other than the reasoning of the court to find the equivalence Plaintiff suggests.  But as noted above courts do not have vocational or medical expertise to make such a finding contrary to the decision of the Commissioner.  If the Commissioner's path in making or explaining his decision is unclear, remand is necessary, but if his path can be reasonably discerned, if he applied the correct legal standard, and if his decision is supported by the evidence, the court may not interject its judgment for that of the Commissioner.  The case of <u>Cayer</u> is to be distinguished from this case for several reasons.  First, the ALJ in <u>Cayer</u> accorded substantial weight to Dr. Steffan's opinion but "did not include in the RFC Dr. Steffan's opinion that Plaintiff would have difficulty responding appropriately to supervisors and difficulty in adapting to a regular work environment."  2016 WL 4208108 at *2.  This reason alone is sufficient to require remand for further proceedings and suggests that the remaining evaluation by the court is <u>dicta</u>.  Moreover, the Commissioner points to VE testimony in <u>Cayer</u> that a limitation to simple routine tasks "is not the same as one-two step instructions," <u>id.</u>, whereas there is no such VE testimony in this case and the ALJ provided much greater nuance to the Mental RFC assessed—"to understand simple instructions, and carry out and remember simple, routine, and repetitive tasks involving only simple, work-related decisions."  (R. 19).

11

In <u>Davis</u>, the plaintiff alleged "the ALJ erred by: (i) failing to consider he fell into a borderline age category when he made his decision, and (ii) improperly evaluating the opinions of the state reviewing physicians."  2018 WL 4346692, at *2.  The Magistrate Judge immediately agreed with the first contention and recommended remand for further proceedings.  <u>Id.</u>  However, after addressing the borderline age category error the judge also addressed the evaluation of the opinions.  <u>Id.</u> at *3-5.  The court noted that the state agency psychological consultants both opined the plaintiff "retained the capacity to perform simple one-to two-step instructions," <u>id.</u> at *3, and the ALJ limited him "to 'simple, routine, and repetitive tasks.'"  <u>Id.</u> (quoting from the RFC assessed).  The court stated the ALJ did not "discuss the finding that the claimant retained the capacity to understand and remember simple one- to two-step instructions and made no explanation as to whether "simple, routine, and repetitive tasks" would allow for the claimant's limitations in the same way."  <u>Id.</u> at *4 (citing <u>Hardman v. Barnhart</u>, 362 F.3d 676, 681 (10th Cir. 2004) (the ALJ may not "pick and choose among medical reports, using portions of evidence favorable to his position while ignoring other evidence"), (<u>citing</u> <u>Switzer v. Heckler</u>, 742 F.2d 382, 385–86 (7th Cir. 1984) ("Th[e] report is uncontradicted and the Secretary's attempt to use only the portions favorable to her position, while ignoring other parts, is improper.")).  The Commissioner argued that the jobs relied upon by the ALJ accounted for the mental limitations assessed, but the court rejected that argument because the jobs relied upon were reasoning level two and three and the court found "[t]he reasoning levels for jobs in the DOT best identify the level of simplicity (or, conversely, complexity) associated with the job."  <u>Id.</u> (citing <u>Cooper v.</u>

Barnhart, 2004 WL 2381515, at *4 (N.D. Okla. Oct. 15, 2004)).  The court explained, "If a claimant is limited to simple one- to two-step instructions, it stands to reason that a job requiring the ability to understand and carry out detailed but uninvolved written or oral instructions and with problems involving a few concrete variables (a reasoning level 2) would create a conflict."  Id. 2018 WL 4346692, at *4 (emphasis added).

This court does not find the rationale of Davis or the other district court cases cited by Plaintiff persuasive.  Those courts have engaged in reasoning that the ALJ picked and chose among the medical opinions based upon the ALJ's use of language which did not precisely mimic the language of the psychologists, while basing their finding of a material difference between the RFC assessed by the ALJ and the language used by the psychologists on the courts' own interpretation of the plain language of the DOT without addressing the purpose of the GED and the reasoning levels therein and without acknowledging that the court does not have the vocational expertise to impose its view of the vocational evidence on the SSA.  When the Davis court stated that "it stands to reason" regarding the reasoning levels of the GED it did not recognize that it was applying a layman's reasoning to a vocational area of expertise without record evidence support, and thereby imposed its judgment over that of the Commissioner without a valid basis for doing so.

The question for the court then, is whether the ALJ's assessment of the mental abilities to "to understand simple instructions, and carry out and remember simple, routine, and repetitive tasks involving only simple, work-related decisions" (R. 19) adequately accounts for the psychologists' opinions that Plaintiff "is able to understand,

13

remember, use judgment, and make decisions for 1 / 2 step instructions and tasks.  [That c]laimant can learn to do routine repetitive activity," and "can attend, concentrate, and maintain pace and persistence for 1-2 step tasks."  (R. 149).  The court finds that it does. Although the ALJ did not use precisely the language used by the psychologists, he is not required to do so.  Wells v. Colvin, 727 F.3d 1061, 1071 (10th Cir. 2013) ("exact correspondence between a medical opinion and the mental RFC is not required").

Moreover, the identical language was not used by Dr. Schulman, Dr. Duclos, Dr. O'Brien, and Dr. Pulcher, but the ALJ accorded significant weight to each of their opinions and Plaintiff has shown no material difference between the four opinions.  In fact, Plaintiff argues that Dr. Schulman recognized Dr. Pulcher "as opining that [Plaintiff] had the capacity for one- to two-step instructions and tasks."  (Pl. Brief 19) (citing R. 94). As Plaintiff argues, Dr. Schulman stated Dr. Pulcher's opinion "indicates capacity for 1/2 step instructions and tasks."  (R. 94).  However, Dr. Pulcher's opinion actually stated Plaintiff is "able to understand and carry out simple instructions, and her attention and concentration fall within normal limits."  (R. 540).  Far from supporting Plaintiff's assumption that the RFC assessed is materially different than Dr. Schulman's opinion, this tends to suggest strongly that Dr. Schulman believes the ability to understand and carry out simple instructions and attention and concentration within normal limits is substantially the same as the capacity for one to two step instructions and tasks.  Each of the doctors here opined that Plaintiff is not mentally disabled within the meaning of the Act.  Further, Dr. O'Brien opined that Plaintiff can "understand and remember simple instructions" but "may have difficulty following some detailed instructions," and can

14

"maintain attention and concentration on simple tasks for periods of at least two hours duration," but "may have difficulty maintaining concentration on some detailed tasks." (R. 653).  Since the ALJ addressed the medical opinions of the state agency psychologists and psychiatrist in the same paragraph of his decision and accorded them all significant weight without distinguishing between them or emphasizing any difference it is clear he viewed them as materially identical, and Plaintiff has not shown otherwise.

While it is possible, and reasonable, to view the opinions as materially different, and Plaintiff has done so, the ALJ clearly did not.  Moreover, the ALJ's view of the opinions is also reasonable.  As this court has noted many times, a plaintiff must demonstrate the error in the ALJ's rationale or finding; the mere fact that there is evidence which might support a contrary finding will not establish error in the ALJ's determination.  "The possibility of drawing two inconsistent conclusions from the evidence does not prevent an administrative agency's findings from being supported by substantial evidence.  We may not displace the agency's choice between two fairly conflicting views, even though the court would justifiably have made a different choice had the matter been before it de novo."  Lax v. Astrue, 489 F.3d at 1084 (citations, quotations, and bracket omitted); see also, Consolo v. Fed. Maritime Comm'n, 383 U.S. 607, 620 (1966).  And, as noted above, to overturn an agency's finding of fact the court "must find that the evidence not only supports [a contrary] conclusion, but compels it." Elias-Zacarias, 502 U.S. at 481, n.1 (emphases in original).  Plaintiff has not met this standard regarding the medical opinions at issue here.

The court finds no error in the ALJ's alleged failure to assess a mental RFC using language identical to that of two of the state agency psychologists.  The ALJ did not pick and choose between the medical opinions at issue here and did not ignore, reject, or discard portions of the opinions while accepting other portions.  Therefore, there was no need for him to explain his alleged rejection.  This court's decision in <u>Carolyn J. S.</u>, No. 18-4049-JWL, 2019 WL 2523575, at *3 does not require a different result.  In <u>Carolyn J. S.</u>, this court found "binding precedent requires remand for the ALJ to resolve the conflict between the ALJ's assessment of a limitation to simple, routine, and repetitive tasks and the mail clerk occupation's requirement of a reasoning level of three."  <u>Id.</u> at *2.  There, this court remanded because the Tenth Circuit in <u>Hackett</u> found an apparent conflict between the "inability to perform more than simple and repetitive tasks and the level-three reasoning required by the jobs identified."  <u>Id.</u> (quoting <u>Hackett</u>, 395 F.3d at 1176).  Here there are no jobs at issue requiring level three reasoning and <u>Hackett</u> and <u>Carolyn J. S.</u> are simply not applicable.

**IT IS THEREFORE ORDERED** that judgment shall be entered pursuant to the fourth sentence of 42 U.S.C. § 405(g) AFFIRMING the Commissioner's final decision.

Dated June 10, 2020, at Kansas City, Kansas.

s:/ *John W. Lungstrum*
**John W. Lungstrum**
**United States District Judge**

16